## The City of Erie, Appellant, *v.* The Public Service Commission of Pennsylvania et al.

*Public Service Company Law—Act of July 26, 1913, P. L. 1374 —Railroads—Abolition of grade crossings.*

The provisions of section 12 of article V of the Act of July 26, 1913, P. L. 1374, give the Public Service Commission exclusive jurisdiction to order any crossing of a highway over the tracks of a railroad to be relocated, or altered, or to be abolished. Necessarily, when crossings are abolished, the part of the street which crosses the railroad tracks can no longer be a part of the thoroughfare.

*Act of June 27, 1913, P. L. 568—Municipalities—Closing of city streets.*

The Act of June 27, 1913, P. L. 568, conferring upon municipalities the control and jurisdiction over the city streets, is not inconsistent with the provisions of the Public Service Company Law. In so far as the closing of streets is a necessary concomitant to the abolition of a grade crossing, the Public Service Commission, to that extent, has control of the streets of a municipal division.

*Public Service Company Law—Amendment of July 17, 1917, P. L. 1025*

The amendment to the Public Service Company Law of July 17, 1917, P. L. 1025, giving to the Public Service Commission authority to open highways and to abandon highways, in connection with the reconstruction or abolition of grade crossings, applies only to highways located in boroughs or townships.

Argued December 4, 1919. Appeal, No. 60, April T., 1920, by The City of Erie from order of the Public Service Commission No. C. 2633, 2634, 2635, 2637 in case

of The City of Erie v. William G. McAdoo, Director General, New York Central Railroad Company, Pennsylvania Railroad Company and Erie & Pittsburgh Railroad Company, and The Public Service Commission of Pennsylvania, on appeal.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Complaint to the Public Service Commission as to the inadequacy of the protection afforded by the railroad companies at certain grade crossings.

The facts are stated in the opinion of the Superior Court.   The commission made the following order:

"That the existing crossings at grade at points where the tracks of the Pennsylvania, New York Central and the Erie & Pittsburgh Railroad Companies respectively cross German, Poplar and Plum streets, in the City of Erie, be and the same are hereby abolished and eliminated by the closing of the portions of said streets lying between the right-of-way lines of said railroad companies, said abolition and elimination to be effective not later than October 1, 1919."

*Error assigned* was the above mentioned order of the commission.

*S. L. Gilson,* for appellant, cited: Franke v. Johnstown Fuel Supply Co., 70 Pa. Superior Ct. 446; People ex rel. Pavillion Nat. Gas Co. v. Public Service Commission, P. U. R. 1919-D944; City of Easton v. Miller, 265 Pa. 25; Carpenter v. Hutchinson, 243 Pa. 260; Jackson v. Pennsylvania R. R. Company, 228 Pa. 566.

*S. Y. Rossiter,* for Pennsylvania Railroad Company, intervening appellee.

*W. Pitt Gifford,* of *Gunnison, Fish, Gifford & Chapin,*

for New York Central Railroad Company, intervening appellee.

*Berne H. Evans,* counsel, and with him, *John Fox Weiss,* assistant counsel for the Public Service Commission.

OPINION BY TREXLER, J., April 24, 1920.

The question of law involved as stated by the appellant is, "Has the Public Service Commission jurisdiction to order a street of a municipality closed between the right-of-way lines of a railroad passing through the city without providing for carrying the street beneath or over the tracks of the railroad?"

In the month of September, 1915, the City of Erie entered into a contract providing for the removal of certain grade crossings at points where the tracks of the said railroad companies cross various streets in the said city and for the erection of subways at certain streets. The work contemplated under the contract was delayed on account of the war. The matter was brought before the commission upon complaint of the city of the inadequacy of the protection afforded by the railroad companies at the grade crossings. After the hearing the commission ordered the existing grade crossings at German, Poplar, and Plum streets to be abolished and eliminated by the closing of the portion of the said streets lying between the right-of-way lines of the said railroad companies, said abolition and elimination to be effective not later than October 1, 1919.

The appellant states that the authority of the commission is not attacked upon any principle of reasonableness. It is purely a question of law involving the statutory authority of the commission to make the order.

The jurisdiction of the Public Service Commission must be found in the act which brought it into existence: Act of July 26, 1913, P. L. 1374; Frank v. Johnstown Fuel Supply Co., 70 Pa. Superior Ct. 446. That act em-

powers the commission to supervise and regulate all public service companies doing business in this Commonwealth. Section 12 of article V, defines with great detail the powers to be exercised by the commission in regard to grade crossings. The section is too long to conveniently quote but the second paragraph starts out with the words, "The Commission shall also have exclusive power upon its own motion or upon complaint and after hearing as hereinafter provided (of which all the parties in interest, including the owners of adjacent property, shall have due notice), to order any crossing aforesaid, now existing or hereafter constructed at grade, or at the same or different levels, to be relocated or altered or to be abolished, according to plans and specifications to be approved, and upon just and reasonable terms and conditions prescribed, by the Commission." The section also provides compensation for damages suffered by the owners of adjacent property, gives the commission the authority to prescribe terms and conditions upon which any crossing shall be constructed, relocated, or altered, or abolished and the proportion of contributions to the expense thereof.

The jurisdiction given is exclusive. It was evidently the intention of the legislature that the whole subject of grade crossings be put under the control of the commission. The appellant objects to this view, at least so far as its application to the present case is concerned, in that it takes away the powers given to cities to control the streets. It is conceded that the legislature has a free hand in regard to the functions of municipalities and can take away the control over the streets if it desires but it is claimed that that control has not been taken away by the act creating the commission. It is evident that this is true in a general sense but cannot be correct when applied to the control of such portions of the streets of a city as are involved in grade crossing cases. Necessarily when crossings are abolished, the part of the street which crosses the railroad tracks can no longer be

part of a thoroughfare. The appellant relies upon the case of City of Easton v. Miller, 265 Pa. 25, in which the Supreme Court stated "it has not been before contended, to our knowledge, that the Public Service Commission has any jurisdiction whatever to determine that a municipality could not continue to do that which it was legally empowered to do before the Public Service Law became effective." This statement must be considered in the light of the facts in that case. A city is not a public service company and the commission therefore has not the right to regulate its affairs, and as stated in that case when such municipalities act strictly as such they are unaffected by the Public Service Act in the exercise of other functions and powers in the performance of their municipal duties. The City of Easton therefore had the right to regulate the travel of vehicles on what was known as Centre Square and had the right to order that street cars should move in a certain direction. The exercise of such rights did not infringe on any of the powers given to the commission: In so far as the Public Service Act does not cover by specific reference or necessary implication the matters delegated to municipalities such matters still remain as heretofore. See Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24. The subject of grade crossings is specifically given into the charge of the Public Service Commission. If the commission is required to rely upon the action of the constituted authorities of a city before they can abolish a grade crossing the powers granted to it are greatly weakened and the word "exclusive" must be regarded as meaningless. Such conflict of authority would defeat the purpose of this section of the act. If the commission were to supply an overhead or underground passage, and thus do what appellants claim should be done, the same argument could be urged for such action would necessitate a change of grade of the street, and that subject is as much within the powers of cities as the location or vacation of streets.

What did the legislature intend when it gave the commission the right to "abolish" grade crossings? The appellant contends that the right to abolish does not confer the power to remove a grade crossing without providing either an overhead or underground passage to take its place. Three words are used in the act, "relocate," or "alter," or "abolish." We must presume that each of these words has some distinctive meaning. They are plainly distinguishable. The commission has power to "relocate" a grade crossing by closing it and providing another in its stead somewhere else. It has a right to "alter" it, that is to change it from a grade crossing to one overhead or underground, or it can "abolish" it, that is do away with it entirely. The last word is clear, and means that the crossing is to be eliminated.

We are then met with the argument that the act provides such crossings are to be relocated or altered, or abolished according to the plans and specifications to be approved and upon just and reasonable terms to be prescribed by the commission, and that the employment of the words, "according to plans and specifications" bound the commission to such acts as required plans and specifications to accomplish. We can see nothing in this argument. The words are not used to limit the powers of the commission but in amplification of them. In other words the commission cannot only order the relocation, alteration, or abolition of grade crossings but they have also control of the methods to be employed in so doing and all the details involved in the work must be approved by them.

The Clark Act of June 27, 1913, P. L. 568, provides a code of government for cities of the third class and confers upon such cities control and jurisdiction over the streets, and in section 18, article V, confers upon said cities the right to provide for and require the construction and maintenance of bridges or other crossings above and under railroad tracks, and it is urged that unless the Public Service Act has not specifically repealed this

section of that act, both acts being passed at the same session of the legislature, the former still remains the law. It is a familiar rule of construction that acts passed at the same session of the legislature should be so construed as to give effect to both: White v. Meadville, 177 Pa. 643; Phila. v. Sciple, 31 Pa. Superior Ct. 64. Nevertheless the clear expression of the latter act leaves no doubt of the intention of its framers, that whatever powers may remain in the cities in regard to the subject-matter of our inquiry, the power in the commission to order any crossing at grade to be relocated, altered or abolished is to be exclusive, and we require no rules of construction to aid us in arriving at its meaning.

As far therefore as the closing of streets is a necessary concomitant to the abolition of a grade crossing the Public Service Commission to that extent has control of the streets of a municipal division. It will be noticed that in this case the part of the street that was closed by the order of the commission was that between the right-of-way lines of the railroad company. The commission did not order the closing of any street beyond the property of the railroads.

Our attention has been called to the amendment of section 12, of the Public Service Act, by the Act of July 17, 1917, P. L. 1025, which gives authority to the commission to open highways to provide access to crossings and to abandon highways which have become unnecessary by the reconstruction or abandonment of crossings, but as the title of the act refers to the opening of such roads in boroughs and townships, we think that the proper conclusion is that the entire amendment is only applicable to those municipal divisions and does not apply to cities.

All the assignments of error are overruled and the order of the Public Service Commission is affirmed.

Appellant for costs.