**NORFOLK SOUTHERN RAILWAY COMPANY, Petitioner**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 2005.

Decided June 10, 2005.

---

Benjamin C. Dunlap, Jr., Harrisburg, for petitioner.

David A. Salapa, Asst. Counsel, Harrisburg, for respondent.

Shawn N. Gallagher, Pittsburgh, for intervenor, Harmar Township.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge FRIEDMAN.

Norfolk Southern Railway Company (Norfolk) petitions for review of the October 5, 2004, order of the Pennsylvania Public Utility Commission (PUC), which, *inter alia:* (1) denied Norfolk's exceptions to the recommended decision of the Administrative Law Judge (ALJ) to "grant" the Complaint filed against Norfolk by Harmar Township (Township); (2) denied Norfolk's motion to dismiss that Complaint for lack of subject matter jurisdiction; and (3) required Norfolk, at its sole cost and expense, to repair and maintain an at-grade, pedestrian railway crossing (Subject Crossing) located at the intersection of Guys Run Road and Freeport Road in the Township along Norfolk's right-of-way.[1] (Norfolk's brief, Appendix A at 15–19.)

On June 11, 2003, the Township[2] filed a Complaint against Norfolk with the PUC,

alleging that Norfolk had failed to maintain the Subject Crossing in compliance with a 1930 Order issued by the Pennsylvania Public Service Commission (PSC), the predecessor of the PUC. The 1930 Order approved a 1929 petition by the Pennsylvania Railroad Company (Pennsylvania Railroad), Norfolk's predecessor, to alter the Subject Crossing from a vehicular/pedestrian crossing to a pedestrian crossing and directed that Pennsylvania Railroad be responsible for all costs and expenses in connection with the Subject Crossing, including its future maintenance.[3] The Township alleged that the Subject Crossing's now deteriorated condition posed a serious risk to the health and safety of the public, and the Township requested that the PUC order Norfolk, as the current operator of Pennsylvania Railroad's rail line, to comply with the terms of the 1930 Order, repair the Subject Crossing and maintain it in the future. (R.R. at 8a–10a.)

On July 18, 2003, Norfolk filed an answer to the Complaint,[4] along with new

---

1. Guys Run Road ends at Freeport Road in a "T" intersection. In addition to having a bus stop, this is the only Freeport Road intersection in the area with a pedestrian crosswalk and traffic signal. The Subject Crossing, which is directly opposite the end of Guys Run Road, is a 200–foot long, four-foot wide, at-grade path that crosses Norfolk's tracks as they run parallel to and between Freeport Road, a four-lane state highway, and Wenzel Drive, a Township Road providing automobile access to the Wenzel Peninsula area along the Allegheny River. The railroad track currently is six feet above the grade of Freeport Road and Wenzel Drive, and the Subject Crossing is reached by means of stairs on the Freeport Road side and a sloping gravel path on the Wenzel Drive side. Asphalt crossing material was removed some years ago, and there are no warning devices at the Subject Crossing. There are two other rail crossings in the area; however, access to the crossing west of the Subject Crossing is blocked, and the crossing to the east of the Subject Crossing is unsafe

for pedestrians because it has no crosswalk, traffic signal or sidewalk. Thus, without the Subject Crossing, travel between Freeport Road and Wenzel Drive could be safely accomplished only by vehicle. (*See* map, R.R. at 292a.)

2. The Township, an intervenor in this case, filed a brief with this court.

3. The 1930 Order actually dealt with three crossings. In addition to *altering* the Subject Crossing, the 1930 Order *abolished* a second existing highway crossing and ordered *construction* of a new highway crossing in a different location. Once the new highway crossing was completed, Pennsylvania Railroad was to vacate the second crossing. (R.R. at 296a–99a; 293a–94a, 295a.)

4. The Complaint also named the Commonwealth of Pennsylvania, Department of Transportation (DOT) and Allegheny County (Coun-

matter. In addition, Norfolk filed a preliminary motion to dismiss the Complaint for lack of subject matter jurisdiction averring that: (1) Pennsylvania Railroad's 1929 petition requested that the PSC "abandon and close" the Subject Crossing as a public vehicular crossing; (2) the 1930 Order altered the Subject Crossing from a vehicular/pedestrian crossing to a four-foot pedestrian crossing; (3) the PUC currently has no jurisdiction over a *pedestrian* crossing; and (4) any prior assertion of jurisdiction and assignment of maintenance responsibilities by the PSC is, therefore, without effect.[5] (R.R. at 28a–38a.)

In its reply to Norfolk's new matter and preliminary motion to dismiss, the Township alleged, *inter alia,* that the 1930 Order did not approve the "abandonment" of the Subject Crossing as Pennsylvania Railroad requested but, rather, approved only the "alteration" of the Subject Crossing from a vehicle/pedestrian crossing to a

four-foot pedestrian crossing, *subject to the conditions* that the Pennsylvania Railroad pay the alteration costs and maintain the Subject Crossing once the alteration was complete.[6] (R.R. at 43a–50a.)

The PUC's Bureau of Transportation and Safety (BTS) conducted a field investigation and conference on site on August 21, 2003, and on October 29, 2003, the case was assigned to the ALJ, who issued a standard prehearing order on November 4, 2003. The ALJ issued an interim order on January 14, 2004, taking Norfolk's motion to dismiss under advisement pending development of an evidentiary record. (R.R. at 55a.) At a January 29, 2004, hearing on the matter, the Township, BTS, the Commonwealth of Pennsylvania, Department of Transportation (DOT) and Norfolk all were represented by counsel. The Township, BTS and Norfolk offered exhibits and presented witnesses,[7] and all participating

ty), which filed answers to the Complaint on July 14, 2003, and July 15, 2003, respectively. (R.R. at 17a–22a; 23a–26a.) Neither are parties in this appeal.

5. Norfolk filed an addendum to its preliminary motion to dismiss on July 22, 2003, noting that it discovered the 1930 Certificate of Public Convenience approving Pennsylvania Railroad's application to "abandon and close" the Subject Crossing and attaching a copy of that document. Norfolk again asserted that, because the Subject Crossing "has been formally abolished, ... any assignment of maintenance responsibility for the remaining pedestrian crossing to [Pennsylvania Railroad] in the [1930 Order] is without effect." (R.R. at 39a–42a.)

6. In its 1929 petition to the PSC, Pennsylvania Railroad states that it "proposes to abandon and close the [Subject Crossing] ... but proposes to maintain at this point a four foot crossing to accommodate pedestrian travel." Pennsylvania Railroad requested that the PSC "issue a certificate of public convenience evidencing its approval of the abandonment of public vehicular crossing [the Subject Crossing] ... and continued maintenance at that point of a four foot pedestrian crossing."

(R.R. at 293a–94a.) In both the 1930 Order and the Certificate of Public Convenience issued in connection with that Order, the PSC changed the wording to provide for approval of the *alteration* of the Subject Crossing from vehicular to pedestrian crossing. (R.R. at 295a–97a.) The 1930 Order also directed that Pennsylvania Railroad plank and pave the altered crossing for a width of four feet and that Pennsylvania Railroad bear the cost of maintenance of the pedestrian crossing. (R.R. at 297a, ¶¶ 3 and 7.)

7. Testifying on behalf of the Township was: Robert W. Siebert, chairman of the Public Safety Committee and Police Committee and vice-chairman of the Board of Supervisors, (R.R. at 61a–129a); James W. Anderson, a Township resident who uses the Subject Crossing on a daily basis to get to the bus for work, (R.R. at 130a–36a); Lawrence A. Seiler, a civil engineer working for a company appointed by the Township engineer, (R.R. at 136a–42a); Dolores Prasnikar, a Township resident who lives on Wenzel Drive and owns a local tavern on that street, (R.R. at 142a–50a); Kenneth Burkhart, a Township resident who lives on Wenzel Drive and owns the Harmar Marina, (R.R. at 150a–55a), and

parties filed briefs. The record closed on April 12, 2004.

■■■ The ALJ issued his recommended decision on July 19, 2004, making eighty-five findings of fact and five conclusions of law. The ALJ found that the 1930 Order remained valid and enforceable even after the repeal of the Act of July 26, 1913, P.L. 1374 (1913 Act), under which the PSC entered that Order.[8] The ALJ also found that, because the 1930 Order "altered," but did not "abolish," the Subject Crossing, the Subject Crossing remained a rail-"highway" crossing. Thus, the ALJ determined that the PUC possessed two independent bases for exercising its jurisdiction in this matter pursuant to its enabling statute, the Public Utility Code (Code):[9] (1) the PUC's right to enforce its orders under section 701 of the Code, 66 Pa.C.S. § 701; and (2) the PUC's responsibility to ensure public safety at rail-"highway" crossings under section 2702 of the Code,[10] 66 Pa.

George Kidzus, a lifetime resident on Wenzel Drive, (R.R. at 155a–61a.) These witnesses testified concerning the current condition of the Subject Crossing and the fact that the Subject Crossing was needed in order for people to access the homes and businesses on either side.

Testifying on behalf of Norfolk was James Rockney, an engineer with Norfolk, who testified as to the length, speed and volume of trains over the Subject Crossing (sixteen trains per day, each approximately a mile long, traveling at 40 miles per hour). Rockney also testified that he did not believe that a crossing was necessary at this location, and he felt that it posed a safety issue due to the speed of the track, the curvature of the rail and the sight distance involved at the location. (R.R. at 161a–89a.)

Testifying on behalf of BTS was David Fischer, an engineer and employee of BTS who conducts field investigations at rail highway crossings throughout the state. He testified that he conducted a field meeting at the site of the Subject Crossing on August 21, 2003. Fischer stated that, as an order of the PSC, the PUC's predecessor, the 1930 Order should be enforced, notwithstanding the fact that the Subject Crossing now was a pedestrian crossing. Fischer stated that there was precedent for such action at Docket C–00913746, (R.R. at 318a–80a), in which the PUC previously directed the railroad to repair and maintain a pedestrian crossing based on a prior order of the PSC. (R.R. at 189a–95a.)

8. The 1913 Act, the PSC's enabling statute, was repealed by the Public Utility Law of 1937 (1937 Act), Act of May 28, 1937, P.L. 1053. The 1937 Act was repealed, in turn, by the Public Utility Code (Code), Act of July 1, 1978, P.L. 598, 66 Pa.C.S. §§ 101–3316.

9. 66 Pa.C.S. §§ 101–3316.

10. The PUC's authority is set forth in the Code, in relevant part, as follows:

(a) **General rule.**—No public utility, engaged in the transportation of passengers or property, shall, without prior order of the [PUC], construct its facilities across the facilities of any other such public utility or across any *highway* at grade or above or below grade, or at the same or different levels; and no *highway*, without like order, shall be so constructed across the facilities of any such public utility, and, without like order, no *such crossing heretofore or hereafter constructed* shall be altered, relocated, suspended or abolished.

(b) **Acquisition of property and regulation of crossing.**—The [PUC] is hereby vested with exclusive power to appropriate property for any *such crossing* ... and to determine and prescribe, by regulation or order, the points at which, and the manner in which, *such crossing* may be constructed, altered, relocated, suspended or abolished, and the manner and conditions in or under which *such crossings shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public.* The [PUC] shall require every railroad the right-of-way of which crosses a public *highway* at grade to cut or otherwise control the growth of brush and weeds upon property owned by the railroad within 200 feet of such crossing on both sides and in both directions *so as to insure proper visibility by motorists.*

(c) **Mandatory relocation, alteration, suspension or abolition.**—Upon its own motion or upon complaint, the [PUC] shall have exclusive power after hearing ... to order

C.S. § 2702. The ALJ then recommended that the PUC grant the Township's Complaint, deny Norfolk's motion to dismiss the Complaint and enforce the 1930 Order by requiring Norfolk to repair and maintain the Subject Crossing. (R.R. at 234a–72a).

Norfolk filed sixteen exceptions to the recommended decision, challenging various findings of fact and objecting to the ALJ's legal conclusion that the PUC had subject matter jurisdiction under either 66 Pa.C.S. § 701 or 66 Pa.C.S. § 2702 to order Norfolk to perform work at a *pedestrian* crossing. The Township filed reply exceptions. In an October 5, 2004, opinion and order, the PUC denied Norfolk's exceptions and its motion to dismiss the Township's Complaint for lack of subject matter jurisdiction. The PUC adopted the ALJ's recommended decision and entered an order directing Norfolk to repair the four-foot wide pedestrian walkway at the Subject Crossing, to clear all vegetation within 200 feet of either side of the Subject Crossing along Norfolk's right-of-way and to maintain the Subject Crossing in the future. (Norfolk's brief, Appendix A at 16, ¶ 5; R.R. at 273a–91a.)

▮▮▮ Norfolk now petitions this court for review of the PUC's October 5, 2004, order,[11] renewing its argument that the PUC does not have subject matter jurisdiction over the *pedestrian* Subject Crossing pursuant to 66 Pa.C.S. § 2702 and, thus, cannot enforce the 1930 Order pursuant to 66 Pa.C.S. §§ 501 and 701. Norfolk contends that the PUC's assertion of jurisdiction in this matter is directly contrary to *County of Bucks v. Pennsylvania Public Utility Commission*, 684 A.2d 678 (Pa. Cmwlth.1996), in which this court held that the PUC lacked subject matter jurisdiction over a *pedestrian* crossing, even though the crossing was created and future maintenance responsibilities were assigned by a prior order of the PSC. We disagree and conclude that the PUC retains authority to enforce the 1930 Order.[12]

---

any *such crossing heretofore or hereafter constructed* to be relocated or altered, or to be suspended or abolished upon such reasonable terms and conditions as shall be prescribed by the [PUC]. In determining the plans and specifications for any *such crossing,* the [PUC] ... *may* abandon or vacate *such highways* ... as, in the opinion of the [PUC], may be rendered unnecessary for public use by the construction, relocation, or abandonment of any *such crossings.* The [PUC] may order the work of construction, relocation, alteration, protection, suspension or abolition of any crossing aforesaid to be performed in whole or part by any public utility....

Section 2702(a)–(c) of the Code, 66 Pa.C.S. § 2702(a)–(c) (emphasis added). In addition, the PUC is granted express authority to allocate costs of construction, relocation, alteration, protection or abolition of such crossings. Section 2704(a) of the Code, 66 Pa.C.S. § 2704(a).

Under these Code sections, the exclusive power of the PUC over crossings is limited and applies only to rail-"highway" crossings.

*County of Bucks v. Pennsylvania Public Utility Commission,* 684 A.2d 678 (Pa.Cmwlth.1996). Section 102 of the Code defines "[h]ighway" as "[a] way or place of whatever nature open to the use of the public as a matter of right *for purposes of vehicular traffic.*" 66 Pa.C.S. § 102 (emphasis added.) Notwithstanding any contrary assertion by the PUC and the Township, we conclude that the Subject Crossing is not used for vehicular traffic and, therefore, does not meet the definition of "highway" in section 102 of the Code. (*See* R.R. at 85a–86a, 106a and 132a–33a.)

11. Our scope of review is limited to determining whether the PUC violated constitutional rights, committed an error of law, rendered a decision that is not supported by substantial evidence, or has violated its rules of practice. *County of Bucks.*

12. Accordingly, we need not address Norfolk's argument that the PUC lacks subject matter jurisdiction over the Subject Crossing pursuant to 66 Pa.C.S. § 2702 because the Subject Crossing now is a pedestrian-only

■ As an administrative agency created by statute, the PUC has only those powers expressly conferred on it by statute or those powers which are necessarily implied from its express powers. *Peoples Natural Gas Company v. Pennsylvania Public Utility Commission,* 664 A.2d 664 (Pa.Cmwlth.1995). The PUC has authority pursuant to section 501 of the Code, 66 Pa.C.S. § 501, to enforce its orders,[13] and section 701 of the Code authorizes the PUC to hear complaints regarding the violation of its orders. That section provides in relevant part:

> The [PUC], or any person, corporation, or municipal corporation having an interest in the subject matter, or any public utility concerned, may complain in writing, setting forth any act or thing done or omitted to be done by any public utility in violation, or claimed violation, of any law which the [PUC] has jurisdiction to administer, or of any regulation or order of the [PUC].

66 Pa.C.S. § 701. Norfolk maintains that an order formerly enforceable by a government entity cannot continue to be enforced where, as here, the underlying law has changed.

■ However, there is express statutory language indicating that the 1930 Order remains valid and enforceable notwithstanding the enactment of subsequent laws. The Act of March 31, 1937, P.L. 160 (1937 PUC Act), while creating the PUC and abolishing the PSC, provided in section 13(f) that:

> All certificates of public convenience, *orders* and rules and regulations made or *issued by the [PSC]* prior to, and in force and effect upon, the effective date of this act, *shall remain in full force and effect* until revoked or modified by the [PUC].

*Formerly* 66 P.S. § 464(f), repealed by the Act of July 1, 1978, P.L. 598 (emphasis added).[14] Further, the 1937 Act, in repealing the 1913 Act, provided that "All ... orders ... issued or *filed under any act repealed by this act,* and in full force and effect upon the effective date of this act, shall *remain in full force and effect* for the term issued, or until revoked, vacated, or modified under the provisions of this act." Section 1404 of the 1937 Act, repealed by the Act of July 1, 1978, P.L. 598 (emphasis added). Similarly, in 1978, when the General Assembly repealed the 1937 Act and

---

crossing that is neither used nor intended for use by any form of vehicular traffic.

**13.** Sections 501(a) and (c) of the Code provide in relevant part that the PUC shall have full power and authority, and it shall be its duty to enforce the Code, by its orders or otherwise, and that every public utility subject to the Code shall observe, obey and comply with such orders and the terms and conditions thereof. 66 Pa.C.S. §§ 501(a) and (c).

**14.** Norfolk argues that the continued validity of the 1930 Order is not guaranteed by section 13(f) of the 1937 PUC Act, *formerly* 66 P.S. § 464(f); rather, section 13(h) of the 1937 PUC Act applies to negate such validity by providing:

> Whenever the term [PSC] occurs in any law, contract or document, or whenever in any law, contract or document reference is

made to such [PSC], such term or reference shall be deemed to refer to and include the [PUC] created by this act *so far as such law, contract or document pertains to matters which are within the jurisdiction of such [PUC].*

*Formerly* 66 P.S. § 464(h), repealed by the Act of July 1, 1978, P.L. 598. However, we reject Norfolk's interpretation, concluding that these sections apply to entirely different matters. Both section 13(f) of the 1937 PUC Act and 103(b) of the Code provide that PSC "orders" will remain in effect. On the other hand, section 13(h) of the 1937 PUC Act provides that the name PUC should replace any references to the PSC in any "law, contract or document."

enacted the Code, it provided in section 103(b) that

> All certificates, permits, licenses, *orders,* rules, regulations or tariffs made, issued, or *filed under any repealed statute* supplied by this part, and in full force and effect upon the effective date of this part, shall *remain in full force and effect* for the term issued, or until revoked, vacated, or modified under the provisions of this part.

66 Pa.C.S. § 103(b) (emphasis added). Therefore, because the 1930 Order was never vacated or modified by the PUC, it remains valid and enforceable notwithstanding any changes in either the 1937 Act or the Code.[15]

In arguing to the contrary, Norfolk relies on *County of Bucks* for the proposition that, where the PUC's jurisdiction over pedestrian crossings has been abrogated by subsequent law, the PUC has no jurisdiction to make orders regarding such a crossing pursuant to a prior order issued by the PSC. We disagree that *County of Bucks* demands a contrary result.

In *County of Bucks,* Amtrak filed a petition with the PUC requesting the abolition of a pedestrian bridge crossing over Amtrak's tracks within the county. The bridge had been constructed pursuant to a 1917 order of the PSC, in which the PSC ordered that an at-grade highway crossing at the site be abolished but required that, before abolishing the highway crossing, Pennsylvania Railroad, Amtrak's predecessor, construct and maintain an aboveground pedestrian bridge at the same location. The PUC asserted jurisdiction over the pedestrian bridge and, because Amtrak was exempt under federal law from paying the costs of closing that crossing, the PUC directed the county to bear seventy-five percent of the cost of closing the pedestrian bridge, periodically inspecting it and maintaining it; the remaining twenty-five percent of those costs were allocated to the township.

The county sought judicial review of this PUC order in *County of Bucks,* contending that the PUC did not have jurisdiction under section 2702 of the Code to close, or allocate the costs of closing, a *pedestrian-only* bridge. Based on the plain language of that Code section, this court agreed. In doing so, we rejected the PUC's contention that it should have jurisdiction because its predecessor, the PSC, ordered the bridge to be built. We concluded that once the at-grade highway crossing was abolished, as ordered by the PSC, the PUC had no

---

**15.** Norfolk also argues that, contrary to the holding of the ALJ and the PUC, *res judicata* does not apply to permit enforcement of the 1930 Order pursuant to section 701 of the Code where the PUC no longer has subject matter jurisdiction over the Subject Crossing. However, as noted by the PUC and the Township, the PSC certainly had jurisdiction to order the "alteration" of the Subject Crossing in the 1930 Order. Therefore, even if the PSC lacked authority to require continued maintenance of the resulting pedestrian crossing, the time to raise that challenge has long since passed, and the validity of the 1930 Order is entitled to *res judicata* effect. *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 408 Pa. 169, 182 A.2d 682 (1962) (noting that a subsequent decision revealing a prior decision to be in error does not preclude the application of *res judicata*); *Bartron v. Northampton County,* 342 Pa. 163, 19 A.2d 263 (1941) (noting that an unappealed order of the PUC is a fact that cannot be challenged later).

In this regard, we reiterate that, in 1929, when Pennsylvania Railroad petitioned the PSC to "abandon and close the [Subject Crossing]", *Pennsylvania Railroad, itself, "proposed to maintain at this point a four foot crossing to accommodate pedestrian travel"* and requested that the PSC "issue a certificate of public convenience evidencing its approval of the abandonment of public vehicular crossing [Subject Crossing] *and continued maintenance at that point of a four foot pedestrian crossing."* (R.R. at 36a–37a.)

power to order the closing or maintenance of the pedestrian bridge that was built in its place; that is, the PUC could not re-assert jurisdiction over a pedestrian crossing based on any purported jurisdiction of the PSC over that crossing.[16]

Norfolk contends that, even if the PSC intended to retain jurisdiction over the Subject Crossing after its 1930 Order *altering* it to a pedestrian crossing,[17] the PUC clearly lost jurisdiction once the term "highway" was defined in its present manner under the Public Utility Law of 1937 (1937 Act).[18] According to Norfolk, because the 1937 Act and the Code supplanted the 1913 Act and specifically limited the PUC's subject matter jurisdiction, the PUC's jurisdiction over the Subject Cross-ing ended when it was altered to a pedestrian crossing or, alternatively, when the 1937 Act defined "highway," thereby divesting the PUC of jurisdiction over the Subject Crossing.[19] *See Fedor v. Borough of Dormont*, 487 Pa. 249, 409 A.2d 334 (1979) (holding that when a statute sets up a system covering the subject matter of a former statute, and is intended as a substitute for the former statute, it is construed to supplant and, therefore, repeal all former statutes on the same subject).

However, in *County of Bucks*, the issue of enforcing the PSC's 1917 order to maintain a pedestrian bridge was not raised. Rather, the issue was whether the PUC had jurisdiction to issue a new order allocating to the county the costs of abolishing

---

**16.** We noted that the 1913 Act limited the jurisdiction of the PSC to rail-highway crossings but did not define the term "highway." We speculated that the PSC may have assumed jurisdiction because it determined that construction of the pedestrian bridge could be required as a condition of the abolishment of the highway crossing. Moreover, we stated that, even if the PSC had been given jurisdiction over pedestrian bridges by the 1913 Act, the General Assembly has the power to narrow or redefine the PUC's jurisdiction as it sees fit, and did so in the Code. *County of Bucks*.

**17.** Norfolk concedes that, in *County of Bucks*, the PSC stated that it *abolished* the at-grade highway crossing and *constructed a new* above-grade pedestrian bridge at the same location, whereas in the present case, the PSC stated that it *altered* the *existing* Subject Crossing from vehicular/pedestrian to pedestrian only. However, according to Norfolk, this is a distinction without a difference because the practical effect is the same, i.e., the "highway" crossing is no more. On the other hand, the PUC and the Township maintain that the distinction between "alter" and "abolish" is pivotal, *see City of Erie v. Public Service Commission*, 74 Pa.Super. 265, 270 (1920) (distinguishing these terms), and because the PSC merely "altered" the Subject Crossing and did not "abolish" it, the PUC retained jurisdiction over the Subject Cross-

ing. *See CSX Transportation, Inc. v. Pennsylvania Public Utility Commission*, 125 Pa. Cmwlth. 528, 558 A.2d 902 (1989) (holding that, because the PUC has exclusive authority to authorize abandonment of rail-highway crossings, where the railroad abandoned a crossing and removed its tracks pursuant to authorization from another entity, the PUC retained jurisdiction to allocate maintenance responsibilities for the crossing to the railroad), *appeal denied*, 523 Pa. 651, 567 A.2d 654 (1989). Under the circumstances presented here, where the "alteration" involved a change from vehicular to pedestrian use, the distinction between the terms "alter" and "abolish" made in *City of Erie* does not apply.

**18.** Act of May 28, 1937, P.L. 1053, repealed and re-enacted by the Code. The present definition of "highway" in section 102 of the Code is substantially the same as that in the 1937 Act.

**19.** Further, Norfolk contends that enforcement of the 1930 Order would result in Norfolk being treated differently than other railroads in that only Norfolk would be required to maintain a pedestrian-only crossing. This may be true; however, Norfolk does not provide any statistics to confirm that no other railroad companies have been required to maintain a crossing altered from vehicular to pedestrian.

a pedestrian-only bridge that had been constructed as a condition of allowing the abolition of the at-grade rail-highway crossing in that location. In the present case, the Township is not asking that Norfolk bear the cost of abolishing, altering or relocating the Subject Crossing; instead, the Township alleges that Norfolk is violating the 1930 Order and seeks to have the PUC enforce that Order by directing Norfolk to maintain the Subject Crossing consistent with the 1930 Order. As discussed, the PUC retains the authority to do so.

In this regard, Norfolk maintains that, even if the PUC can enforce the 1930 Order, it has no statutory basis to order Norfolk to control the growth of vegetation within 200 feet of the Subject Crossing in its right-of-way. Norfolk points out that section 2702(b) of the Code authorizes the PUC to require a railroad to control the growth of brush and weeds on its property within 200 feet of a crossing *"to insure proper visibility by motorists."* 66 Pa.C.S. § 2702(b) (emphasis added). Norfolk reminds us that there is no evidence that the Subject Crossing is used by motorists. However, just before the phrase quoted by Norfolk, section 2702(b) vests the PUC with the power to determine and prescribe by regulation or order "the manner and conditions in or under which such crossings shall be maintained, operated, and protected *to effectuate the prevention of accidents and the promotion of the safety of the public."* 66 Pa.C.S. § 2702(b) (emphasis added). Importantly, the 1913 Act, under which the 1930 Order was issued, also allowed the PSC to regulate the maintenance of crossings to prevent accidents and promote public safety. Article V, Section 12 of the 1913 Act. Thus, the PUC's authority to order a railroad to control vegetation along its right-of-way is simply a specific example of the powers that the

PSC could, and now the PUC can, exercise to enforce the 1930 Order.

Accordingly, for these reasons, we affirm.

### ORDER

AND NOW, this 10th day of June, 2005, the order of the Pennsylvania Public Utility Commission, dated October 5, 2004, is hereby affirmed.

Dissenting opinion by Judge COHN JUBELIRER.

DISSENTING OPINION BY Judge COHN JUBELIRER.

Respectfully, I dissent from the majority's scholarly opinion because I conclude that the Public Utility Commission (PUC) does not now have jurisdiction over this crossing.

As the majority correctly notes, Norfolk filed a preliminary motion to dismiss the Township of Harmar's complaint for lack of subject matter jurisdiction because: (1) Pennsylvania Railroad's 1929 petition requested that the Public Service Commission (PSC) "abandon and close" the Subject Crossing as a public vehicular crossing; (2) the 1930 Order altered the Subject Crossing from a vehicular/pedestrian crossing to a four-foot *pedestrian* crossing; (3) the PUC currently has no jurisdiction over a *pedestrian* crossing; and, (4) any prior assertion of jurisdiction and assignment of maintenance responsibilities by the PSC is, therefore, without effect. I agree with the majority that the 1929 petition requested to "abandon and close" the crossing; that the PSC granted in its 1930 order an "alteration" that changed the crossing from vehicular/pedestrian to pedestrian only; and, that the PUC does not have jurisdiction over pedestrian-only crossings. However, I disagree with the majority's conclusion that,

due to various provisions transferring the powers and duties of the PSC to the PUC, the PUC has jurisdiction over this pedestrian-only crossing today.

First, I do not think it is clear whether the PSC, itself, had jurisdiction over a pedestrian-only crossing. Of course, it could not pass on to its successor, the PUC, jurisdiction it did not have. However, even if the PSC did have jurisdiction over a pedestrian-only crossing, I do not think that the PUC retained that jurisdiction after May of 1937.

Section 13(f) of the Act of March 31, 1937, P.L. 160 (March 1937 Act),[1] which created the PUC and abolished the PSC, provided that

All certificates of public convenience, orders and rules and regulations made or issued by the [PSC] prior to, and in force and effect upon, the effective date of this act, shall remain in full force and effect until revoked or modified by the [PUC].

However, Section 13(h) of the March 1937 Act,[2] limits this grant of authority to matters within the jurisdiction of the PUC by specifying that:

Whenever the term Public Service Commission occurs in any *law*, contract or document, or whenever in any *law*, contract or document reference is made to such Public Service Commission, such term or reference shall be deemed to refer to and include the Public Utility Commission created by this act *so far as such law*, contract or document *pertains to matters which are within the juris-*

*diction of such Public Utility Commission.*

(Emphasis added.)

When the March 1937 Act was enacted, it directed that the PUC "shall have the power and its duty shall be to administer and enforce" the 1913 Act. Section 12 of the 1913 Act had given the PSC jurisdiction to relocate, alter or abolish grade crossings where the tracks of a railway were constructed across a public "highway" or vice versa. Neither the 1913 Act nor the March 1937 Act contained a definition of "highway"; however, on May 28, 1937, the legislature passed the Public Utility Law,[3] which, for the first time, contained a definition of "highway" as used in public utility law. That provision defined "highway" to mean "every way or place, of whatever nature, open to the use of the public as a matter of right for purposes of *vehicular* traffic." Section 2(12) of the Public Utility Law.[4] (Emphasis added.) In my view, upon passage of the Public Utility Law, the two-month old Public Utility Commission lost any jurisdiction it may formerly have enjoyed over a pedestrian-only crossing and, therefore, under subsection (h) of the March 1937 Act, the PUC no longer retained jurisdiction over the matter because the subject crossing did not involve a "highway" as that term was defined.

This position is in accord with our opinion in *County of Bucks v. Pennsylvania Pub. Util. Comm'n*, 684 A.2d 678 (Pa. Cmwlth.1996), where we held, after reviewing the statutory authority of the PSC and its successor, the PUC, that the PUC did not have jurisdiction over a pedestrian-only crossing, notwithstanding any prior

1. *Formerly* 66 P.S. § 464(f), repealed by Section 2 of the Act of July 1, 1978, P.L. 598.

2. *Formerly* 66 P.S. § 464(h), repealed by Section 2 of the Act of July 1, 1978, P.L. 598.

3. Act of May 28, 1937 P.L. 1053, *formerly* 66 P.S. §§ 1101–1562.

4. *Formerly* 66 P.S. § 1102.

grant of jurisdiction the PSC may have had. Unlike the majority, I believe that *County of Bucks* is applicable to this case.

In *County of Bucks*, the PSC, in a 1917 order, directed that an at-grade highway crossing be abolished and ordered that, before the railroad abolished the crossing, it had to construct and maintain an above-grade pedestrian bridge at the same location. In 1985, the railroad petitioned the PUC for permission to abolish the crossing where the pedestrian bridge crossed over the tracks. At that time, the railroad and the Township of Bristol agreed that the pedestrian bridge was a hazard.

The PUC granted the petition and ordered the railroad to bear the cost, in the first instance, to remove the stairway to the bridge and barricade it to pedestrians. The PUC also determined that a hearing was needed to determine the allocation of costs and expenses for the closing and removal of the structure. At the hearing, the PUC, the railroad and the Pennsylvania Department of Transportation filed a stipulation recommending that the Township and County of Bucks bear the costs for closing the bridge, as well as all future maintenance costs. Also at the hearing, the railroad changed the relief it sought and requested only the permanent closure of the bridge, rather than the abolishment of the crossing, so that it would not need to restructure its catenary system.

The Administrative Law Judge observed that the railroad was federally exempted from paying the allocated closing costs and assessed those costs upon the Township (25%) and the County (75%). The PUC adopted this determination, rejecting the County's and Township's exceptions. The County appealed to this Court and the Township intervened.

On appeal, the County and Township contended that the PUC did not have jurisdiction to close or allocate the costs of closing a pedestrian-only bridge. We agreed, noting, "the PUC's authority to allocate the costs in a highway-rail crossing must be found within the [Public Utility] Code . . . and no such authority exists. . . ." *Id.* at 682. The PUC contended that it had jurisdiction because, its forerunner, the PSC, had ordered the bridge to be built. Our opinion noted that the issue of the PSC's jurisdiction had apparently not been raised when it ordered the abolishment of the highway crossing and its jurisdiction may have been assumed. We explained, however, that:

> Once the highway bridge was abolished, as ordered by the Public Service Commission, there was no basis for the PUC's assertion of jurisdiction based on any purported jurisdiction of the Public Service Commission. Even if the Public Service Commission had been given jurisdiction over pedestrian bridges by the 1913 law, it is within the powers of the General Assembly to narrow or redefine the PUC's jurisdiction as it sees fit.

*Id.* Further, we noted that, "[t]he plain language of the present [Public Utility] Code limits the PUC's jurisdiction to highways for vehicular traffic[,] which excludes the pedestrian bridge at issue here without regard to any prior assertion of jurisdiction." *Id.*

Here, as in *County of Bucks*, a highway crossing had been changed to pedestrian-only by an action of the PSC and the question of costs and ongoing maintenance is in issue. Although in *County of Bucks* the PSC order directed that the crossing in issue be "abolished" and replaced with a pedestrian bridge, the order in our case has the same practical effect. By altering the subject crossing from a vehicular/pedestrian crossing to a four-foot *pedestrian* crossing, the order eliminated vehicular traffic and permitted only pedestrian traffic; thus, as it had done in *County of*

*Bucks*, the PSC created a pedestrian-only crossing. As of May 1937, the PUC did not have jurisdiction over a pedestrian-only crossing. Therefore, I would conclude, as we did in *County of Bucks*, that the Commission lacked jurisdiction, and its order must be reversed.

Finally, I observe that the present provision in the Public Utility Code, Section 2702(b), 66 Pa.C.S. § 2702(b), authorizes the PUC to require a railroad to control the growth of brush and weeds on its property within 200 feet of a crossing "to insure proper visibility *by motorists*." (Emphasis added.) This Section arguably does not apply here because there is no reasonable evidence that *motorists* use the crossing.

For these reasons, I would reverse the order of the PUC.